UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 1:19-cv-00032-JMS-MPB |
| ONE 2015 CHEVROLET CITY EXPRESS LS VIN 3N63M0YN1FK725252, | ) |
| Defendant. | ) |
| JOHNASTY L. MCDANIEL, | ) |
| Claimant. | ) |

## ORDER

This matter involves a civil asset forfeiture action where an individual claiming property that was seized filed a claim with the Government, thereby triggering certain statutory obligations on the part of the Government under the Civil Asset Forfeiture Reform Act of 2000.

Johnasty McDaniel filed a claim with the Drug Enforcement Agency ("DEA") for a 2015 Chevrolet City Express LS VIN 3N63M0YN1FK725252 (the "Defendant Vehicle"). The DEA, acknowledged receipt of the claim on October 27, 2017. On January 4, 2019, the Government filed a Complaint for Forfeiture In Rem for the Defendant Vehicle. [Filing No. 1.] After filing a verified claim with the Court asserting ownership of the Defendant Vehicle, Ms. McDaniel has now moved to dismiss the Government's Complaint, and that motion is ripe for the Court's review. [Filing No. 8.]

# I.
## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *See* Active Disposal Inc. v. City of Darien, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. *See* McCauley v. City of Chicago, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." Munson v. Gaetz, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

In addition, civil forfeiture complaints are subject to a heightened pleading standard described in Fed. R. Civ. P. Supp. G. *See* United States v. Funds in the Amount of $239,400, 795 F.3d 639, 641 (7th Cir. 2015) ("Rule G is a supplement to the Federal Rules of Civil Procedure that applies to in rem actions like this forfeiture case"). That rule states, in relevant part, that a complaint must:

> (a) be verified; (b) state the grounds for subject-matter jurisdiction, in rem jurisdiction over the defendant property, and venue; (c) describe the property with reasonable particularity; (d) if the property is tangible, state its location when any

seizure occurred and – if different – its location when the action is filed; (e) identify the statute under which the forfeiture action is brought; and (f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Fed. R. Civ. P. Supp. G(2).

## II.
### BACKGROUND

Prior to setting forth the facts of this case, the Court first addresses the attachments included in the parties' filings. Both the Government and Ms. McDaniel attached certain supplementary documents to their filings. The Government attached a warrant for the arrest of the property to its Complaint, [Filing No. 1-2], while Ms. McDaniel attached both a sentencing order and a letter acknowledging her claim for the Defendant Vehicle from the Drug Enforcement Agency ("DEA"), [Filing No. 8-1; Filing No. 8-2]. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, it is well settled that the court may take judicial notice of matters in the public record. *Palay v. United States*, 349 F.3d 418, 425 n. 5 (7th Cir. 2003), and both the arrest warrant and the sentencing order qualify as such. *See Sherman v. Chiapetta*, 2012 WL 4793502, at *2 (N.D. Ill. Oct. 9, 2012) (taking judicial notice of an arrest warrant); *Boyd v. Alcoke*, 2010 WL 3420124, at *1 (N.D. Ill. Aug. 27, 2010) (taking judicial notice of criminal sentencing order). As for the DEA letter acknowledging receipt of Ms. McDaniel's claim, the Seventh Circuit has held that executive and agency determinations are subject to judicial notice, *Fornalik v. Perryman*, 223 F.3d 523, 529 (7th Cir. 2000) (taking judicial notice of the notice sent to an individual by an executive agency advising him of the status of his immigration action), and therefore the Court concludes that it may take judicial notice of the DEA letter. Accordingly, the Court need not convert Ms. McDaniel's Motion to Dismiss to a motion

3

for summary judgment. In accordance with the foregoing, the following are the factual allegations set forth in the Complaint, as well as in the parties' attachments.

From April 2016 through May 2017, the DEA utilized a confidential informant to execute controlled buys of drugs from members of a drug trafficking organization ("DTO.") [Filing No. 1 at 2.] On July 29, 2017, the DEA conducted surveillance of two members of the DTO who used the Defendant Vehicle to drive from Indianapolis, Indiana to Gary, Indiana as part of a drug deal. [Filing No. 1 at 2-3.] On August 15, 2017, pursuant to a search warrant, the DEA searched the residence of one of the DTO members and seized drugs, weapons, and the Defendant Vehicle. [Filing No. 1 at 4.] The Defendant Vehicle was registered to Ms. McDaniel, who was the girlfriend of one of the DTO members. [Filing No. 1 at 4.]

On September 13, 2017, the Government filed an indictment (the "Indictment") against the DTO members. [Filing No. 1 at 4.] The Indictment gave notice that the United States would seek to forfeit any property "constituting or derived from any proceeds the defendants obtained directly or indirectly as a result of the offenses . . . and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the offenses." [Filing No. 1 at 2.]

On October 11, 2017, the DEA received a claim for the Defendant Vehicle from Ms. McDaniel. [Filing No.1 at 4]. On October 27, 2017, the DEA acknowledged receipt of Ms. McDaniel's claim for the Defendant Vehicle. [Filing No. 8-1.]

On August 31, 2018, at the sentencing hearing for one of the DTO members, the Court ordered the forfeiture of $19,177.00 and a Taurus 45 caliber pistol but did not mention the Defendant Vehicle. [Filing No. 8-2].

On January 4, 2019, the Government filed a Complaint for Forfeiture In Rem of the Defendant Vehicle. [Filing No. 1.] On January 16, 2019, Ms. McDaniel filed a Verified Complaint asserting title to the Defendant Vehicle. [Filing No. 7.] On February 5, 2019, Ms. McDaniel filed a Motion to Dismiss the Complaint. [Filing No. 8.]

### III.
#### DISCUSSION

In her Motion to Dismiss, Ms. McDaniel argues that the Government's Complaint is untimely because the Government did not file the Complaint within the ninety-day requirement set forth in the applicable statute. [Filing No. 8 at 3.] Ms. McDaniel acknowledges that 18 U.S.C. § 983 allows an alternative to filing a civil forfeiture complaint within 90 days of receipt of the claim, but argues that under the alternative path, the property must be specifically identified in an indictment. [Filing No. 8 at 3.] In this case, Ms. McDaniel contends that the Government never specifically identified the Defendant Vehicle in the Indictment, and that the Court did not mention the Defendant Vehicle in the Sentencing Order. [Filing No. 8 at 4.] Additionally, Ms. McDaniel contends that the Government deprived her of her property and she had no forum in which to contest the seizure. [Filing No. 8 at 5.] Instead, she "filed her timely verified claim with the seizing agency on October 11, 2017, and over 14 months have elapsed before the Government chose to file a civil complaint." [Filing No. 8 at 6.]

In its response, the Government argues that it has complied with the applicable statute and that the Government's Verified Complaint of Forfeiture In Rem was "timely filed." [Filing No. 8 at 1.] The Government contends that Ms. McDaniel's timeliness argument has no merit because forfeiture language was included in the September 13, 2017 Indictment, which was filed prior to Ms. McDaniel's October 11, 2017 claim to the vehicle. [Filing No. 10 at 3.] The Government asserts that the Defendant Vehicle "is within the description of the property included in the

5

Indictment's forfeiture allegation." [Filing No. 10 at 3.] Moreover, the Government contends that the Indictment's forfeiture language was sufficient because under Rule 32.2(a) of the Federal Rules of Criminal Procedure, an indictment does not need to identify the property subject to forfeiture. [Filing No. 10 at 4.] Additionally, the Government argues that Ms. McDaniel's Due Process argument is incorrect because Ms. McDaniel could have petitioned for release of the Defendant Vehicle if she believed that the Government's possession of the Defendant Vehicle would cause a "substantial hardship" under 18 U.S.C. § 983. [Filing No. 10 at 5.]

In her reply, Ms. McDaniel argues that even if the Government's general language in the indictment were sufficient notice, it still did not comply with the statute because it "did nothing to preserve its right to maintain custody of the property" as required by the applicable criminal forfeiture statute because "warrant for the vehicle was never sought by the Government or issued by the Court in the criminal case" and it "never alleged the extent of the interest in the vehicle to be forfeited, never filed a bill of particulars, and did not specifically identify" the Defendant Vehicle in the indictment. [Filing No. 11 at 3-5.] Additionally, Ms. McDaniel contends that the right to due process applies equally to all individuals, not those merely suffering a substantial hardship. [Filing No. 11 at 6.]

**A. The Civil Asset Forfeiture Reform Act of 2000**

In order to understand the statute at issue here, some background is helpful. "Laws providing for the official seizure and forfeiture of tangible property used in criminal activity have played an important role in the history of our country," dating back to the seizure of ships engaged in piracy. *United States v. Parcel of Land, Bldgs., Appurtenances & Improvements, Known as 92 Buena Vista Ave., Rumson, N.J.*, 507 U.S. 111, 118 (1993); *see also Leonard v. Texas*, 137 S. Ct. 847, 848 (2017) (providing background on forfeitures). Forfeiture statutes can provide for either

6

criminal or civil forfeiture, with the distinction being that criminal forfeiture "is an in personam proceeding against a defendant in a criminal case and is imposed as a sanction against the defendant upon his conviction," while "civil forfeiture is an in rem proceeding against the property that the government seeks to obtain, without regard to the guilt or innocence of the property owner because the theory is that the property itself has committed the wrong." *United States v. Moya-Gomez*, 860 F.2d 706, 721 n.15 (7th Cir. 1988); *see also Leonard*, 137 S. Ct. at 849 ("Whether forfeiture is characterized as civil or criminal carries important implications for a variety of procedural protections, including the right to a jury trial and the proper standard of proof").

Writing for the majority in a 1974 Supreme Court case, Justice Brennan discussed in rem civil forfeiture proceedings from their biblical, English, and colonial American origins, emphasizing that a proceeding in rem has historically stood "independent of, and wholly unaffected by any criminal proceeding in personam" with the property itself being "treated as the offender, without regard to the owner's conduct, as the only adequate means of suppressing the offence or wrong, or insuring an indemnity to the injured party." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 680-84 (1974) (citations and quotations omitted). In *Calero-Toledo*, the Court further stated that "[t]o the extent that such forfeiture provisions are applied to lessors, bailors, or secured creditors who are innocent of any wrongdoing, confiscation may have the desirable effect of inducing them to exercise greater care in transferring possession of their property." *Id*. at 687–88; see also *United States v. One 1988 Ford Mustang, VIN No. 1FABP45E7JF268886*, 728 F. Supp. 495, 497 (N.D. Ill. 1989) (citations and quotations omitted) ("civil forfeiture is an in rem proceeding against the property that the government seeks to obtain, without regard to the guilt or innocence of the property owner because the theory is that the property itself has committed the wrong").

7

Congress altered this landscape significantly in August 2000 by passing the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA") – a comprehensive revision of civil forfeiture laws. Prior to that time, "civil judicial forfeiture proceedings were governed by statutes and rules found throughout the U.S. Code and the Federal Rules of Civil Procedure." Stefan D. Cassella, *The Civil Asset Forfeiture Reform Act of 2000: Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*, 27 J. Legis. 97, 101 (2001). However, the aim of CAFRA was not merely to reorganize the rules governing civil asset forfeiture.[1] It was to ensure due process, with one member of Congress observing that civil forfeitures "all too often punish[] innocent persons" using procedures that "may have made sense in the 18th century, when ships containing contraband or smuggled goods were seized," but that now needed reform "to ensure fundamental fairness and due process rights." Civil Asset Forfeiture Reform Act, Hearing Before the Committee on the Judiciary, No. 94, 104th Cong., 2nd Session, 3 (July 22, 1996) (quoting Representative Henry Hyde).

At the same time, the enactment of CAFRA "was, in part, a reaction to the perception that there was some inequity in imposing strict deadlines and sanctions on property owners contesting civil forfeiture actions, while not imposing similar deadlines and sanctions on the government." Cassella, *Civil Asset Forfeiture Reform Act*, 27 J. Legis. at 125. Therefore, among other things, CAFRA set forth several deadlines for nonjudicial civil forfeiture proceedings, including deadlines by which the Government must notify interested parties of a forfeiture, 18 U.S.C. § 983(a)(1), deadlines by which a person claiming such property may file a claim, 18 U.S.C. § 983(a)(2), and

---

[1] And indeed, the enactment of CAFRA did little to bring the laws governing civil asset forfeiture under one statutory umbrella, with the Court of Appeals for the Fourth Circuit observing that "The subject matter jurisdiction for forfeiture is conferred by 28 U.S.C. § 1355(a); the authority to forfeit is provided by 21 U.S.C. § 881(a)(6); and the rules of procedure for pursuing a civil forfeiture are provided by 18 U.S.C. § 983." *United States v. Wilson*, 699 F.3d 789, 795 (4th Cir. 2012).

deadlines with which the Government must comply when such claims are made, 18 U.S.C. § 983(a)(3).

Only the latter provision is at issue in this case, and it was "designed to allow a property owner faced with a nonjudicial forfeiture to require the *initiation* of a judicial action." *Lozano v. United States*, 2008 WL 11408438, at *2 (S.D. Fla. Mar. 24, 2008) (emphasis in original) (citing *United States v. Martin*, 460 F. Supp.2d 669, 673 (D. Md. 2006)). It does so by setting forth two paths that the Government may take when a claim has been filed. First, the Government may file a complaint for forfeiture within 90 days of a claim being filed. 18 U.S.C. § 983(a)(3)(A) ("not later than 90 days after a claim has been filed, the Government shall file a complaint for forfeiture" or "return the property pending the filing of a complaint"). In this case, the Government does not contend that it complied with this provision, therefore the Court's analysis is solely focused on the second potential path the Government may take after a claim has been filed, found in 18 U.S.C. §983(a)(3)(B).

### B. CAFRA at 18 U.S.C. §983(a)(3)(B).

In order to comply with 18 U.S.C. § 983(a)(3)(B), when a person claiming property seized in a nonjudicial civil forfeiture has filed a claim for the property, the Government must "obtain a criminal indictment containing an allegation that the property is subject to forfeiture" and "take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute" or "promptly release the property." In her briefs, Ms. McDaniel contends that the Government met neither of these requirements.

*1. Whether the Indictment Satisfies 18 U.S.C. § 983(a)(3)(B)(ii)(I)*

Turning to the first requirement, the Indictment in this case provided that the Government would seek to forfeit any property "constituting or derived from any proceeds the defendants

9

obtained directly or indirectly as a result of the offenses . . . and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the offenses." [Filing No. 1 at 2.]

The parties argue about whether the Government was required to specifically identify the Defendant Vehicle in the indictment, but their briefs are of little assistance in answering this question. Ms. McDaniel cites no authority in her Motion to Dismiss in support of her argument that the Government's "generic" description of the property subject to forfeiture is insufficient. In its response, the Government cites sources having to do with criminal forfeiture, rather than civil forfeiture. The Government first cites *United States v. Estevez*, 845 F.2d 1409 (7th Cir. 1988) and *United States v. Kahale*, 789 F. Supp. 2d 359, 377 (E.D.N.Y. 2009), which are inapposite to this case because they involved criminal forfeiture under the Comprehensive Crime Control Act of 1984, not civil forfeiture under CAFRA. To the extent that the holdings in both *Estevez* and *Kahale* are based on provisions of the Federal Rules of Criminal Procedure, the Court notes that those rules do not govern civil forfeitures. Fed. R. Crim. P. 1(5)(B) (providing that "[p]roceedings not governed by these rules include . . . a civil property forfeiture for violating a federal statute"). The Government next cites Fed. R. Crim. P. 32.2(a), which provides that an "indictment or information need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks." But here again, the Federal Rules of Criminal Procedure explicitly note that they do not govern civil property forfeiture. Fed. R. Crim. P. 1(5)(B). Missing from the Government's argument is any explanation as to why the Federal Rules of Criminal Procedure should control in this case or why cases having to do with criminal forfeiture have any bearing on this same.

The Court recognizes that 18 U.S.C. § 983(a)(3)(B) is a complicated statutory provision that has been called a "somewhat convoluted exception to the ninety-day rule." Cassella, *Civil Asset Forfeiture Reform Act*, 27 J. Legis. at 146. Caselaw interpreting it is scant and caselaw on the specific issue of what must be contained in the indictment in order to comply with 18 U.S.C. § 983(a)(3)(B) is non-existent. Accordingly, the Court's analysis of the issue is guided by several premises.

First, the Court is mindful of "the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980).

In addition, it is well settled that "[f]orfeitures are not favored; they should be enforced only when within both letter and spirit of the law." *United States v. One 1936 Model Ford V-8 De Luxe Coach, Motor No. 18-3306511*, 307 U.S. 219, 226 (1939); *see also United States v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538, 1547 (11th Cir. 1987) (same); *United States v. One 2007 Harley Davidson St. Glide Motorcycle VIN 1HD1KB4197Y722798*, 982 F. Supp. 2d 634, 638 (D. Md. 2013) (quoting *United States v. Borromeo*, 945 F.2d 750, 752-53 (4th Cir. 1991) (discussing "the traditional rule that the law disfavors forfeitures; that courts strictly construe rules governing forfeitures;" and that "strict compliance with the letter of the law by those seeking forfeiture must be required")); *United States v. Torres*, 2015 WL 505596, at *3 (D. Neb. Feb. 6, 2015) (citing *United States v. Real Props. located at 7215 Longboat Drive*, 750 F.3d 968, 974 (8th Cir. 2014) ("As a general rule, forfeitures are not favored by the law and statutes providing for forfeitures are strictly construed")). As such, "forfeiture statutes are strictly construed against the

11

government." *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1068 (9th Cir. 1994) (citing *1936 Model Ford*, 307 U.S. at 226).

Both of these factors lead the Court to conclude that the Indictment in this case is insufficient to satisfy the requirements of 18 U.S.C. § 983(a)(3)(B)(ii)(I). First, the plain language of the statute requires the government to "obtain a criminal indictment containing an allegation that the property is subject to forfeiture." It does not contain any forgiving provision like that found in Fed. R. Crim. P. 32.2(a), stating that an indictment need not identify the property subject to forfeiture. Nor does it reference the standards surrounding criminal forfeiture. The Court declines to read into 18 U.S.C. § 983(a)(3)(B)(ii)(I) the language, standards, or caselaw surrounding criminal forfeiture. The plain language of the statute does not support such a reading. Second, strictly construing the language of 18 U.S.C. § 983(a)(3)(B)(ii)(I) against the Government similarly supports a finding that the general description found in the Indictment does not suffice.

Before analyzing the second provision of 18 U.S.C. § 983(a)(3)(B)(ii), the Court will briefly address the Government's argument that it "complied with CAFRA and provided sufficient notice and timeliness to potential claimants when it included a forfeiture allegation in Victor Boyd's criminal indictment." [Filing No. 10 at 5.] The Government's argument regarding notice to potential claimants is misplaced given the provision of CAFRA at issue in this case. It is true that CAFRA governs how the Government must notify interested parties of a forfeiture, but those rules are set forth in a separate subsection of the statute. *See* 18 U.S.C. § 983(a)(1). By contrast, the deadlines in 18 U.S.C. § 983(a)(3) do not arise until a claimant has already filed a claim with an administrative agency. 18 U.S.C. § 983(a)(3) was designed "to allow a property owner faced with a nonjudicial forfeiture to require the initiation of a judicial action." *Lozano*, 2008 WL 11408438, at *2. Therefore, notice to claimants is not relevant to 18 U.S.C. § 983(a)(3), as this

12

provision presumes notice has occurred as it does not come into play until a claim has been filed with the appropriate administrative agency.[2] Accordingly, the Government's arguments on this issue are misplaced.

The Government's failure to include an allegation in the Indictment that the Defendant Vehicle was subject to forfeiture provides sufficient grounds for the Court to conclude that the Government did not comply with 18 U.S.C. § 983(a)(3)(B)(ii). However, the Court will briefly consider Ms. McDaniel's alternative argument.

> 2. *Whether the Government took necessary steps to maintain custody of the Defendant Vehicle under 18 U.S.C. § 983(a)(3)(B)(ii)(II)*

Ms. McDaniel also argues that the Government failed to comply with 18 U.S.C. § 983(a)(3)(B)(ii) by doing "nothing to preserve its right to maintain custody of the property within the criminal forfeiture statute." Ms. McDaniel is correct that 18 U.S.C. § 983(a)(3)(B)(ii) includes both a requirement that the indictment contain an allegation that the property is subject to forfeiture and a requirement that the Government "take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute." 18 U.S.C. § 983(a)(3)(B)(ii)(II); *see also United States v. $16,072.00 in U.S. Currency*, 2019 WL 1229827, at

---

[2] As previously noted, the parties did not identify any authority interpreting what must be included in an indictment under 18 U.S.C. § 983(a)(3) and the Court's independent research similarly revealed none. The Court notes that in *United States v. One Dodge Durango 2004*, 545 F. Supp. 2d 197, 204 (D.P.R. 2006) one court provided that "[a]lthough the indictment does not specifically identify the defendant property and currency, the description given therein of the property which would be subject to forfeiture provided adequate notice to claimant that any property or currency which constitutes drug proceeds or is derived from drug proceeds, or that was used in any manner to facilitate the distribution or possession of narcotics, were subject to forfeiture." *Dodge Durango*, however, delved only into the issue of whether the Government had provided notice to potential claimants under 18 U.S.C. § 983(a)(1)(A)(i). It follows that the court would examine notice and constructive notice in analyzing the issue. *Dodge Durango* did not discuss whether the description contained in the indictment passed muster under 18 U.S.C. § 983(a)(3). Accordingly, it has no bearing on this case.

*5 (N.D.N.Y. Mar. 15, 2019) ("Were the court to adopt the position that all the government had to do to preserve its ability to file a subsequent civil forfeiture proceeding was name the defendant property in the criminal indictment within ninety days of [a] claim, it would render § 983(a)(3)(B)(ii)(II) wholly superfluous").

However, it is well settled that district courts are "entitled to find that an argument raised for the first time in a reply brief is forfeited." *Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) (citing *Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 389 (7th Cir. 2003)). Ms. McDaniel's only mention of the second provision of 18 U.S.C. § 983(a)(3)(B)(ii)(II) in her opening brief is its inclusion in her quotation of the statutory language. She makes no argument concerning the Government's failure to preserve its right to maintain custody of the Defendant Vehicle in her opening brief and raises this argument for the first time in her reply brief. [Filing No. 11 at 2.] Accordingly, the Court finds that Ms. McDaniel's argument concerning 18 U.S.C. § 983(a)(3)(B)(ii)(II) is waived. Ultimately, however, this waiver is not dispositive in this case, as the Court previously found that the Government had failed to comply with 18 U.S.C. § 983(a)(3)(B)(ii)(I).[3]

## IV.
### CONCLUSION

"[I]n 2000, Congress, reacting to public outcry over the government's too-zealous pursuit of civil and criminal forfeiture, passed the Civil Asset Forfeiture Reform Act." *Smoke Shop, LLC v. United States*, 761 F.3d 779, 782 (7th Cir. 2014) (citations and quotations omitted). In this case,

---

[3] Having found sufficient grounds to grant her Motion to Dismiss, the Court need not consider Ms. McDaniel's alternative arguments regarding Due Process, although the Court notes the Supreme Court's recent statement that "whether modern civil-forfeiture statutes can be squared with the Due Process Clause and our Nation's history" is an "important question." *Leonard*, 137 S. Ct. at 847.

14

when Ms. McDaniel filed her claim with the DEA claiming the Defendant Vehicle, the Government was required to comply with 18 U.S.C. § 983(a)(3)(B) within 90 days. For the reasons set forth herein, the Court finds that the Government failed to do so.

Therefore, pursuant to 18 U.S.C. § 983(a)(3)(B), Ms. McDaniel's Motion to Dismiss [8] is **GRANTED**, and the Government shall promptly release the Defendant Vehicle pursuant to the applicable regulations promulgated by the Attorney General. Final judgment shall issue by separate entry.

Date: 4/9/2019

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record.**